## JOHN FAHEY, Tutor *v.* R. J. ANDERSON et al.

The plaintiff sued for land, on a Spanish grant, which had been confirmed by the United States commissioner, directing a location and survey to be made of the land. The survey was never made. The United States subsequently sold the land, and the defendant claimed under that title. *Held*; Under the circumstances, the defendant was entitled to the land in question. A sale by the United States of any portion of the public land, before the issuance of a patent certificate on a Spanish grant, is valid, unless the land be embraced within the stated boundaries of the grant which had been confirmed.

APPEAL from the District court of St. Landry. *Cushman J. John E. King* and *E. H. Martin*, for plaintiff. *Linton and Dupré*, for defendants. The judgment of the court was pronounced by

ROST, J. This is a petitory action. The plaintiff's title is a commissioner's certificate, confirming the claim of their ancestor, *John McDaniel*, to a tract of land containing two hundred superficial arpents, founded on settlement and occupancy prior to the year 1803, by one *James H. Teal*.

The defendants called in warranty the heirs of their vendor, who appeared, and after pleading the general issue, set up title by purchase from the United States, on the 30th of December, 1815. They are in actual possession of the land, and have pleaded the prescriptions of ten, twenty and thirty years. There was judgment in their favor, from which the plaintiff, in his capacity of tutor, appealed.

The commissioner's certificate of the plaintiff describes the land as situate in the county of Opelousas, on bayou Chicot, said to be bounded on one side by *Madame Christopher Teal*, and to have such form and marks, natural and artificial, as shall be represented in a plat thereof, to be returned by the principal deputy surveyor.

The land being only said to be bounded by *Madame Christopher Teal*, and there being no actual possession to show on which side of *Madame Teal's* land it was situated, the description is too vague to identify and set apart any definite portion of the public domain. The plaintiff's claim was confirmed under an act of Congress, passed in 1809. By the provisions of that act, the claimant was bound to cause to be made at his expense, under the direction of the surveyor general, the survey mentioned in the certificate of the commissioners; and no patent certificate could issue, until a plat of the land was filed in the office of the register of the district in which the land is situated. This survey, alone, could have separated the plaintiff's land from the public domain; and as it never was made, and neither the plaintiff nor their author appear to have taken any steps after the confirmation, to perfect their title, the defendants' vendor could not, by the use of reasonable diligence, have ascertained the location of their

86

claim; under that state of facts, it has been uniformly held, that before the issuing of the patent certificate, the sale, by the United States, of any portion of public land not necessarily embraced within the stated boundaries of the tract confirmed, is valid.

It is shown, that on a township map, made in 1816, and approved in 1829, the plaintiff's claim received the location for which he now contends; but as the land had been sold in 1815, to the defendants' vendor, who was then in actual possession of it, we are unable to perceive how this location on the township map, would avail the plaintiff, even if it could supersede the patent certificate, an admission which we are not prepared to make.

This view of the case, renders it unnecessary to notice the plea of prescription.

The judgment is affirmed, with costs.